**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

YOLANDA MONTOYA,

     Plaintiff,

v.                                                  Civ. No. 19-271 JAP/LF

ANDREW M. SAUL,[1] Commissioner
of the Social Security Administration,

     Defendant.

**MEMORANDUM OPINION AND ORDER**

On March 11, 2020, Plaintiff Yolanda Montoya filed an amended motion to reverse and/or remand the Commissioner's denial of her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 1381 *et seq*.[2] *See* AMENDED MOTION TO REVERSE AND/OR REMAND (Doc. 29). The Commissioner filed a response in opposition on March 30, 2020, and Ms. Montoya filed a reply on April 30, 2020. *See* BRIEF IN RESPONSE TO PLAINTIFF'S MOTION TO REVERSE AND REMAND THE AGENCY'S ADMINISTRATIVE DECISION (Doc. 30); REPLY IN SUPPORT OF MOTION TO REVERSE AND/OR REMAND (Doc. 31). Upon review of the record and the applicable law, I find that the Administrative Law Judge ("ALJ") failed to consider the effect of Ms. Montoya's migraine headaches when he formulated her residual functional capacity ("RFC"). I therefore grant Ms. Montoya's motion and remand this case to the Commissioner for further proceedings consistent with this opinion.

---

[1] Andrew M. Saul became the Commissioner of the Social Security Administration on June 17, 2019, and is automatically substituted as the defendant in this action. FED. R. CIV. P. 25(d).

[2] The Court granted Ms. Montoya leave to file an amended motion to reverse and/or remand. *See* MEMORANDUM OPINION AND ORDER (Doc. 28).

## I.     Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[3] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

---

[3] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 404.981, as it is in this case.

II.        **Applicable Law and Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show:  (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[4] of presumptively disabling impairments; *or* (4) the claimant is unable to perform her "past relevant work."  20 C.F.R. §§ 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that her impairment meets or equals a Listing but proves that she is unable to perform her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience.  *Id.*

---

[4] 20 C.F.R. pt. 404, subpt. P, app. 1.

### III.     Background and Procedural History

Ms. Montoya was born in 1967, graduated from high school, and worked as a sales advisor at Octopus Car Wash for 23 years. AR 92–93, 245.[5] On January 21, 2016, Ms. Montoya filed an application for Disability Insurance Benefits ("DIB"), alleging disability since October 31, 2009 due to chronic lower back pain, tail bone pain, leg pain and numbness, sciatica, pudendal nerve pain, groin and vaginal pain, left shoulder blade pain, migraines, depression, high blood pressure, and arthritis. AR 119–130, 215–216. The Social Security Administration ("SSA") denied her claim initially on April 19, 2016. AR 145–148. The SSA denied her claim on reconsideration on August 12, 2016. AR 150–154. Ms. Montoya requested a hearing before an ALJ. AR 157. On August 22, 2017, ALJ Frederick Upshall, Jr., held a hearing. AR 87–117. ALJ Upshall issued a decision unfavorable to Ms. Montoya on March 14, 2018. AR 10–25.

The ALJ found that Ms. Montoya met the insured requirements of the Social Security Act through June 30, 2015. AR 15. At step one, the ALJ found that Ms. Montoya had not engaged in substantial, gainful activity since October 31, 2009, her alleged onset date. *Id.* At step two, the ALJ found that Ms. Montoya suffered from the following severe impairments: degenerative disc disease, osteoarthritis, planter fasciitis, and pudendal neuralgia. AR 16. The ALJ also found that Ms. Montoya had a non-severe migraine impairment and no medically determinable mental impairment as of the date last insured. AR 16–17.

At step three, the ALJ found that none of Ms. Montoya's impairments, alone or in combination, met or medically equaled a Listing. AR 17–18. Because the ALJ found that none of

---

[5] Document 8-1 is the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

the impairments met a Listing, the ALJ assessed Ms. Montoya's RFC. AR 18–22. The ALJ found

that Ms. Montoya had the RFC to

> lift up to 10 pounds occasionally and lift or carry lesser weights frequently. She is
> able to stand or walk for approximately 2 hours in an 8 hour workday and sit for
> approximately 6 hours in an 8 hour workday with normal breaks. She requires the
> ability to change positions from sitting to standing at will. Pushing and pulling is
> limited only by her ability to lift and carry. She can never climb ladders, ropes, or
> scaffolds, occasionally climb ramps or stairs and occasionally stoop, crouch, kneel,
> and crawl. Handling and fingering, bilaterally is limited to frequent. She must avoid
> concentrated exposure to environmental irritants such as fumes, odors, dusts, and
> gases. This RFC is consistent with a range of sedentary work as defined in 20 CFR
> 404.1567(a).

AR 18.

At step four, the ALJ concluded that Ms. Montoya could not perform any of her past

relevant work. AR 23. The ALJ found Ms. Montoya not disabled at step five because she could

perform jobs that exist in significant numbers in the national economy—such as dowel inspector,

circuit board screener, and cigar head piercer. AR 23–24. On May 17, 2018, Ms. Montoya asked

the Appeals Council to review the ALJ's unfavorable decision.[6] AR 5, 214. Ms. Montoya

submitted additional evidence to the Appeals Council. AR 2, 38–85, 358–359. On February 4,

2019, the Appeals Council denied the request for review. AR 1–3. Ms. Montoya timely filed her

appeal to this Court on March 26, 2019.[7] Doc. 1.

## IV.    Ms. Montoya's Claims

Ms. Montoya raises several arguments for reversing and remanding this case based on the

ALJ's decision: (1) the ALJ erred at step two in determining that her migraine headaches were a

---

[6] Ms. Montoya requested an extension of time to submit argument and/or evidence, which the Appeals
Council granted. AR 31–35.

[7] A claimant has 60 days to file an appeal. The 60 days begins running five days after the decision is mailed.
20 C.F.R. § 404.981; *see also* AR 3.

non-severe impairment; (2) the ALJ erroneously failed to consider the limiting effects of her migraine headaches when he formulated her RFC; (3) the ALJ failed to consider Ms. Montoya's testimony regarding the side effects of her migraine medication or the aftermath of a migraine; (4) the ALJ should not have considered Ms. Montoya's compliance with her doctor's instructions to exercise as an indication that she was not disabled; and (5) the ALJ improperly inferred that the care Ms. Montoya provides for her child signifies that she can perform substantial gainful activity. *See* Doc. 29 at 16–26. In addition, Ms. Montoya contends that the ALJ did not have the authority to hear her claim because the ALJ was not properly appointed under the Appointments Clause of the Constitution at the time of the hearing. *Id.* at 26–27. The Court will first consider Ms. Montoya's Appointment Clause argument before turning to her specific arguments concerning the ALJ's rationale for denying benefits.

## V.    Analysis

### 1.    Ms. Montoya has waived her Appointments Clause challenge.

Ms. Montoya argues that remand is required because ALJ Upshall was not appointed under the Constitution's Appointment Clause at the time of the hearing and thus did not have legal authority to preside over the case. *See* Doc. 29 at 25–26 (citing *Lucia v. SEC*, 138 S. Ct. 2044 (2018)). In response, the Commissioner argues that Ms. Montoya has waived this argument because she failed to raise an Appointments Clause argument during her administrative proceedings before the SSA. *See* Doc. 30 at 13–25. In her reply, Ms. Montoya does not dispute that she failed to raise this issue at the agency level, but contends that she was not required to exhaust this issue before raising it for the first time in district court. *See* Doc. 31 at 5–6.

In a recent decision, the Tenth Circuit Court of Appeals addressed exhaustion of Appointments Clause challenges in the social security context. *See Carr v. Comm'r, SSA*, 961 F.3d 1267 (10th Cir. 2020). The Tenth Circuit expressly held that Social Security disability claimants

waive Appointments Clause challenges in district court if they failed to first exhaust them in their administrative proceedings before the SSA. *Id*. at 1268. Because the claimants in *Carr* raised their Appointments Clause challenges for the first time in district court, the Tenth Circuit concluded that they waived their Appointments Clause challenges. *Id*. Like the claimants in *Carr*, there is no evidence in the administrative record that Ms. Montoya raised an Appointments Clause challenge at any point in her SSA administrative proceedings. In light of the Tenth Circuit's ruling in *Carr*, the Court concludes Ms. Montoya has waived her Appointments Clause challenge by failing to exhaust it before the SSA.

    **2.   The ALJ did not commit reversible error at Step Two**.

Ms. Montoya contends that the ALJ erred at step two in determining that her migraine headaches were not a severe impairment. *See* Doc. 29 at 16–21. She argues that the ALJ overlooked "overwhelming evidence" in the record establishing the severity of her headache impairment. *Id*. at 17–18. She further contends that the ALJ cherry-picked evidence to support his non-severity finding, and that the evidence he relied upon did not constitute substantial evidence. *Id*. at 18–21.

During the hearing before the ALJ, Ms. Montoya testified that she began having migraine headaches in high school. AR 98. The migraine headaches affected her ability to perform her job duties at the car wash. AR 98–99. She explained that lights shining off vehicles caused her to become sensitive to light and triggered her headaches. AR 99. She missed work due to the headaches, but could not recall how much work she missed. *Id*. Ms. Montoya took medication for the headaches and never sought treatment from a neurologist for them. AR 101. Even after she stopped working at the car wash, Ms. Montoya continued to get the headaches. AR 100. She testified that although they are fewer than before, she presently has migraine headaches four times

a month. *Id*. When she senses a headache coming on, she takes prescription medication and goes to a dark room. *Id*. Her headaches cause her to experience neck pain and to feel nauseous, for which she takes anti-nausea medicine. *Id*. The nausea medicine in turn makes her feel dizzy and drowsy. AR 100–101. After a migraine headache is over, she feels an aftermath for a couple of days, which she described as a "throbbing inside [her] head." AR 101.

In his step two analysis, the ALJ summarized Ms. Montoya's testimony regarding her migraine headaches and acknowledged that there were pre-DLI[8] medical records containing "diagnoses for migraines, as well as evidence of treatment with prescription drugs like Imitrex and Relpax." AR 16. That said, the ALJ determined that the migraine headaches were a non-severe impairment because the medical evidence in the record did not support Ms. Montoya's testimony regarding "the alleged frequency" of the headaches or "the alleged degree or duration of symptoms." AR 17. In particular, the ALJ noted that during the pre-DLI period, two of Ms. Montoya's doctors indicated that she had only "3 [migraine] episodes per year", a frequency that was far less than the "4 per month" Ms. Montoya alleged at the hearing.[9] *Id*. As to the degree or

---

[8] The ALJ utilized this term in his decision to refer to the period prior to Ms. Montoya's Date Last Insured (DLI), which was June 30, 2015. *See* AR 15.

[9] During the hearing, the ALJ inquired as to this inconsistency:

> Q.  Yeah. And it says, again, this is at Exhibit 11F, page 184. It says chronic migraines three per year. So, if you're getting them four per month and they were even more frequent back then why would we have – why would the – why would you have told the doctors you were getting about three a year or that you only had to take the medication every two or three months?
> A. I'm not sure. Maybe I didn't go to the doctor to when I had the migraine or the headache if I –
> Q. But this is when you told them how often you had them not how often you went to him. It says migraines three per year.
> A. And then – and, you know, he says that then that's what I told him.
> Q. Okay. Thank you.

AR 103.

duration of symptoms, the ALJ observed that the medical record showed "strikingly little in the way of objective, headache-specific abnormalities or consistent and regular treatment during the pre-DLI period." *Id*. He noted that medical records showed Ms. Montoya took prescription medication for migraines "only 2-3 times per year, i.e., highly infrequently." *Id*. The ALJ also found that the record did not "reflect consistent renewal or use of [migraine] prescription, or show regular emergency room visits or commensurate treatment with neurologists or pain specialists." *Id*. Based on these reasons, the ALJ determined that Ms. Montoya's migraine headaches were not a severe impairment at step two of the sequential analysis.

In her motion, Ms. Montoya argues that the ALJ improperly evaluated the medical evidence and gave reasons that are not supported by substantial evidence. *See* Doc. 29 at 17–21. She contends that "[h]ad the ALJ properly evaluated the medical evidence pertaining to [her] migraine headaches and her treatment for the same, he more likely than not, would have concluded that [her] treatment for migraine headaches was commensurate with her allegations and thus severe." *Id*. at 21. Ms. Montoya's argument fails as a matter of law because it is well established that an ALJ does not commit reversible error at step two if he finds at least one severe impairment:

> An impairment is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). A claimant must make only a *de minimis* showing to advance beyond step two. *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004). To that end, a claimant need only establish, and an ALJ need only find, one severe impairment. *See Oldham v. Astrue*, 509 F.3d 1254, 1256–57 (10th Cir. 2007) (noting that, for step two, the ALJ explicitly found that the claimant "suffered from severe impairments," which "was all the ALJ was required to do"). The reason is grounded in the Commissioner's regulation describing step two, which states: "If you do not have a *severe* medically determinable physical or mental impairment . . . or a combination of impairments that is severe . . ., we will find that you are not disabled." 20 C.F.R. § 404.1520(a)(4)(ii) (emphasis added). By its plain terms, the regulation requires a claimant to show only "*a* severe" impairment—that is, *one* severe impairment—to avoid a denial of benefits at step two. *Id.* (emphasis added). As long as the ALJ finds one severe impairment, the ALJ may not deny benefits at step two but must proceed to the next step. *Thus, the failure to find a particular impairment severe at*

> *step two is not reversible error when the ALJ finds that at least one other impairment is severe.*

*Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) (emphasis added). Here, the ALJ found four other impairments were severe and proceeded through the remaining steps in the sequential evaluation process. Thus, the ALJ's failure to find Ms. Montoya's headaches severe at step two is not reversible error and does not warrant remand.

### 3. The ALJ failed to consider the limiting effects, if any, of Ms. Montoya's migraine headaches when he formulated her RFC.

In connection with her step two argument, Ms. Montoya argues that the ALJ committed error by failing to consider the limiting effects of her migraine headaches when he determined her RFC. *See* Doc. 29 at 21, 23. Ms. Montoya contends she has functional limitations arising from her migraine headaches that the ALJ failed to account for in her RFC. *Id.*; *see also* Doc. 31 at 4. The Court agrees that when determining a claimant's RFC, the ALJ is required to "consider the limiting effects of all [her] impairment(s), even those that are not severe." 20 C.F.R. § 404.1545(e). This is because symptoms from other impairments "may cause a limitation of function beyond that which can be determined on the basis of the anatomical, physiological or psychological abnormalities considered alone[.]" *Id*. In assessing the total limiting effects of an impairment, the ALJ must consider all of the evidence, including the objective medical evidence, Ms. Montoya's activities of daily living, precipitating and aggravating factors, and treatment received for an impairment. *Id*.; *see also* 20 C.F.R. § 404.1529(c).

Here, the ALJ began his RFC analysis by acknowledging his earlier step two finding that Ms. Montoya did not have a severe migraine impairment. AR 19. He then indicated that Ms. Montoya was "ambiguous about what she thinks was causing her headaches" and "[t]o the extent there is possible overlap with her severe impairments," he would "carr[y] over" the headache

allegations as "potential symptoms of spine impairment rather than as separate neurologic or mental impairments." *See id*. However, nowhere in his subsequent discussion of Ms. Montoya's RFC, and in particular her spine impairment, did the ALJ actually address her complaints of headaches and any associated symptoms or limitations. *See* AR 19–22. While he extensively discussed Ms. Montoya's musculoskeletal impairments in formulating her RFC, the ALJ mentioned headaches in passing only once—stating that Ms. Montoya was "unremarkable in terms of . . . noteworthy headache . . . symptoms" in connection with her physical impairments. AR 20. Beyond this statement, however, the ALJ did not address the objective medical evidence in the record chronicling Ms. Montoya's history of migraine headaches and the treatment she received.[10] And although the ALJ implied that the headaches were related to Ms. Montoya's spine impairment,

---

[10] Aside from the few records cited by the ALJ in his step two analysis of Ms. Montoya's migraine headaches, the ALJ did not otherwise address any of the medical evidence concerning the headaches at any point in his written decision. *See, e.g.*, AR 741 (treatment note dated January 28, 2011 indicating that "Patient continues to have headaches, after taking the antibiotic. She is having clear nasal discharge. She has headaches even to the back of her head and into her shoulder area. Patient has been taking Imitrex for quite some time for migraines. Patient states the medication is not helping either."); AR 757 (treatment note dated June 17, 2010 for "migraine and sinus HA with photosensitivity despite Imitrex X one week"); AR 901 (treatment note dated August 7, 2012 for "pressure and headaches for one week . . . Pt. does have a history of migraine headaches. She does take medication for her migraines and this did not help improve her headache the last 2 days"); AR 474 (treatment note dated May 20, 2013 indicating that "she is currently having a migraine. . . . She usually uses Relpax and it has not helped. In the past, she has had a shot of an anti-inflammatory medicine that usually helps and she is requesting that today. . . . The patient was given 60 mg of Toradol IM"); AR 517–518 (treatment note dated February 24, 2015 for "Migraine: This is a chronic problem. The current episode started more than 1 year ago. The problem occurs intermittently. The problem has been waxing and waning. The pain is located in the left unilateral region. Radiates to: across forehead. The pain quality is similar to prior headaches. The quality of the pain is described as pulsating. The pain is severe. Associated symptoms include nausea. . . . Associated symptoms comments: Flashing lights and photophobia. The symptoms are aggravated by bright light (environmental allergies). Treatments tried: relpax and phenergan. The treatment provided significant relief. Her past medical history is significant for migraine headaches."); AR 780 (treatment note dated October 26, 2009 indicating that "[r]ecent headache improved with trigger point injections"); AR 783 (treatment note dated October 5, 2009 indicating that "patient has had a headache, mostly left-sided, and upper neck for approximately 8 days. She was having some nausea and photosensitivity, although that did not respond to Imitrex.").

he never cited to any medical evidence supporting such a finding. Nor did he consider the medical records that suggested Ms. Montoya suffered from traditional migraines not associated with her spinal condition. The ALJ also failed to address Ms. Montoya's testimony at the hearing of work-related functional limitations she had due to the headaches. *See* AR 99–100 (Ms. Montoya testifying that the headaches restricted her ability to work and caused her to miss work). In sum, the ALJ's failure to properly consider Ms. Montoya's migraine headaches when formulating her RFC constitutes clear legal error. *See Wells v. Colvin*, 727 F.3d 1061, 1069 (10th Cir. 2013) ("[A] conclusion that the claimant's mental impairments are non-severe at step two does not permit the ALJ simply to disregard those impairments when assessing a claimant's RFC and making conclusions at steps four and five."); *See also Hill v. Astrue*, 289 F. App'x 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has any severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") (emphasis in original) (citations omitted). The Court must, therefore, remand this case for further administrative analysis to determine the effect, if any, that Ms. Montoya's headaches had on her RFC. This is not to say that the ALJ may not reach the same result on remand; however, without the correct application of law and analysis, this Court cannot confidently say that Ms. Montoya's RFC should not include limitations from her migraine headache impairment.

### VI.    Conclusion

Because the Court concludes that the ALJ erred in failing to consider the limiting effects, if any, of Ms. Montoya's migraine headaches when he formulated her RFC, remand is warranted.

The Court finds that Ms. Montoya has waived her Appointments Clause challenge. As for the remaining alleged errors, the Court will not address them because they "may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

It is therefore ordered that Ms. Montoya's AMENDED MOTION TO REVERSE AND/OR REMAND (Doc. 29) is granted. The Commissioner's final decision is reversed, and this case is remanded for further proceedings in accordance with this opinion.

_____

SENIOR UNITED STATES DISTRICT JUDGE